# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DWAYNE THRASH,

Plaintiff,

v.

THORNTON TOWNSHIP, *et. al.*,

Defendants.

Case No. 1:24-CV-04936
Hon. Beth W. Jantz

## <u>ORDER</u>

Before the Court are Defendants' Motions to Dismiss. Dkt. Nos. 16, 17. Defendants Tiffany Henyard and Keith Freeman filed a Joint Motion to Dismiss, Dkt. No. 16, and Defendant Thornton Township filed a partial Motion to Dismiss. Dkt. No. 17. Plaintiff Dwayne Thrash opposes both Motions. Dkt. Nos. 29, 30.

For the reasons below, the Court GRANTS the Motions IN PART and DENIES the Motions IN PART. Discovery has been stayed during the pendency of this motion. The parties are to file a joint proposed schedule by 10/16/25 that proposes deadlines for (if not already done): (1) service of Rule 26(a)(1) initial disclosures; (2) service of written discovery requests; (3) the close of fact discovery; and (4) amendment of pleadings. The Court will set a status hearing following review and entry of that joint proposed schedule (as well as noting if the parties have any interest in settlement talks).

# I.   FACTUAL BACKGROUND

All of the following allegations come from Plaintiff's Complaint. Plaintiff Dwayne Thrash began working for Municipal Defendant Thornton Township around 2003 as a Maintenance Manager. Dkt. No. 1, ¶ 10. In 2021, Thrash was elected to serve as President of the Thornton Township Trustees of Schools (the Township School Board). Dkt. No. 1, ¶ 11. After being elected, Thrash continued to work with Thornton Township as a Maintenance Manager. Dkt. No. 1, ¶ 12.

In April 2023, Andrew Holmes was elected to serve as a Trustee on the Township School Board with his term to end in April 2029. Dkt. No. 1, ¶ 15. Following Holmes being elected, Defendant Keith Freeman approached Thrash about a plan that Freeman had made with Defendant Tiffany Henyard to take over and make changes to the Township School Board. Dkt. No. 1, ¶ 17.

A few months prior to Holmes's election, the attorney representing the school board retired and a new attorney, Sarie E. Winner, took over. Dkt. No. 1, ¶ 13. Freeman, however, wanted to terminate Winner and install his preferred law firm, Del Galdo Law Group LLC, as the Sole Board Attorney and Counsel for the Township School Board. Dkt. No. 1, ¶ 20.

From April through early May 2023, Freeman took Thrash out to eat several times to convince Thrash to go along with Freeman and Henyard's plan. Dkt. No. 1, ¶ 19. During this time, Freeman also approved giving Thrash a $10,000 raise. Dkt. No. 1, ¶ 18. Thrash further alleges that Michael T. Del Galdo, Senior Partner of the Del Galdo Law Group LLC, called Thrash and asked if Thrash was going along with

Freeman and Henyard's plan to install Del Galdo's firm. In response, Thrash said "he had to think about it." Dkt. No. 1, ¶ 21.

On May 15, 2023, Freeman called a Special Meeting of the Township School Board with an agenda that included: (1) the installing of new Township School Board Trustee Andrew Holmes; (2) terminating Winner's position and appointing the Del Galdo law firm in her place, as well as (3) the appointment of a new Treasurer. Dkt. No. 1, ¶ 23–24.

A day prior to this meeting, Henyard and Freeman called Thrash to see if he was going to attend the Special Meeting and go along with Henyard and Freeman's plans. Dkt. No. 1, ¶ 25. On this call, Thrash told Henyard and Freeman something to the effect of "you want to fire everyone in the office and I'm not going to go along with that." Dkt. No. 1, ¶ 26. Thrash did not attend the meeting the following day. Dkt. No. 1, ¶ 27. A quorum was not present and, therefore, the Del Galdo Law Group LLC was not installed as counsel for the School Board. Dkt. No. 1, ¶ 29.

On June 14, 2023, less than a month after the Meeting, Thrash received a call from Dr. Jerry L. Weems, the Executive Director of Transitional Operations at Thornton, in which Dr. Weems informed Thrash that his employment with Thornton had been terminated. Dkt. No. 1, ¶ 31. Dr. Weems accused Thrash of engaging in misconduct and alleged that Thrash failed to punch in and out properly and that on May 30, 2023, he engaged in "insubordination and unsatisfactory work performance." Dkt. No. 1, ¶ 33. However, on May 30, 2023, Thrash was on vacation and Thrash was never previously notified of any write ups. Dkt. No. 1, ¶ 34.

## II.    CLAIMS

Plaintiff Thrash brings five sets of claims against all Defendants. Thrash brings claims under 42 U.S.C. §1983 for First Amendment retaliation (Count I), §1983 Procedural Due Process claims through the Fourteenth Amendment's Due Process clause (Count II), Illinois state claims for Retaliatory Discharge (Count III), §1983 Conspiracy claims related to the Procedural Due Process claim (Count IV), and state claims for intentional infliction of emotional distress (Count V). Dkt. No. 1. Thrash brings these claims against the individual Defendants Tiffany Henyard and Keith Freeman, in both their official and individual capacities, and against Defendant Thornton Township, a municipality. Dkt. No. 1, ¶¶ 43–74. Finally, Thrash brings a state law claim alleging a violation of the Illinois Personnel Record Review Act ("IPRRA") against just Defendant Thornton Township (Count VI). Dkt. No. 1, ¶¶ 75–81.[1]

Defendants Henyard and Freeman (the "Individual Defendants") move to dismiss all five counts against them (I–V) in both their official and individual capacities. Dkt. No. 16. Defendant Thornton Township moves to dismiss Counts I through V, but does not move to dismiss Count VI. Dkt. No. 17.

---

[1] The Court notes that Thrash denoted the IPRRA claim as Count VIII, but he did not bring a Count VI or VII. Dkt. No. 1 at 12. Therefore, the Court refers to this Count as Count VI. The Township did not move to dismiss this count.

# III. LEGAL STANDARDS

## A. Dismissal Under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. State Law Claims In Federal Court

When a plaintiff files an Illinois state law claim in federal court, the courts "apply the relevant decisions of the Illinois Supreme Court," and "if a question of law has not yet been decided by that court, we are to make a 'prediction of how the Supreme Court of Illinois would rule' on it." *Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 369 (7th Cir. 2018) (quoting *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811–12 (7th Cir. 2018)). In making these "*Erie* Guesses," federal courts "are to take into account trends in a state's intermediate appellate decisions, but the focus is always a prediction about the state's highest court." *Cmty. Bank of Trenton*, 887 F.3d at 811. "[W]here direct expression by an authorized state tribunal

is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements." *Hartzler v. Chesapeake & O. Ry. Co.*, 433 F.2d 104, 107 (7th Cir. 1970)

## IV. DISCUSSION

### A. <u>Claims Against the Individual Defendants</u>

#### 1. <u>Official Capacity Claims (Counts I, II, III, IV, and V)</u>

Defendants Henyard and Freeman move to dismiss all claims against them in their official capacity, arguing that such claims are redundant of Thrash's claims against Thornton Township. Dkt. No. 16 at 3–4. Thrash concedes this point. Dkt. No. 29 at 1–2. As such, all claims against Henyard and Freeman in their official capacities are DISMISSED WITH PREJUDICE. This includes Counts I, II, III, IV, and V to the extent those counts are brought against Henyard and Freeman in their official capacity.

* * * * *

The Court now turns to the individual capacity claims.

#### 2. <u>First Amendment Retaliation Claims (Count I)</u>

Thrash brings claims under section 1983 for First Amendment retaliation against Defendants Tiffany Henyard and Keith Freeman. Dkt. No. 1, ¶¶ 43–54. To properly plead a claim for First Amendment retaliation under section 1983, a plaintiff must demonstrate that he (1) engaged in activity protected by the First Amendment;

(2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the speech was at least a motivating factor in the adverse employment action. *Carr v. Chicago Bd. of Educ.*, No. 19-CV-7275, 2023 WL 6520348, at *18 (N.D. Ill. Oct. 4, 2023) (citing *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016)).

Here, Defendants only challenge the third element, that the Plaintiff's speech was at least a motivating factor in the adverse employment action. Specifically, the moving Defendants argue there is not a plausible inference of retaliatory intent because (1) there was a full month between the free speech and the alleged retaliation, and (2) Thrash was terminated by Dr. Weems, not the Individual Defendants. Dkt. No. 16 at 6.

Alleging a temporal proximity of one month between the protected activity and a alleged retaliatory action is sufficient to allege retaliatory intent, even under the more exacting *but-for* causation standard. *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008) ("This court has found a month short enough to reinforce an inference of retaliation."). Thus, the only issue is whether, as alleged, it is plausible that Dr. Weems was acting on behalf of, or at the direction of, the Individual Defendants. The Court finds that it is plausible for the following reasons.

The parties do not dispute that Dr. Weems was a subordinate of the Individual Defendants, so it is plausible that the Individual Defendants could direct Weems to fire Thrash. Additionally, Dr. Weems fired Thrash over alleged behavior that occurred while Thrash was on vacation and shortly after Thrash was granted a $10,000 raise. Thus, it is plausible that Dr. Weems fired Thrash for reasons other

than stated, such as being ordered by Defendants in retaliation for not helping install the Del Galdo law firm as counsel. The Court is also mindful that, assuming Dr. Weems was directed by the Individual Defendants to fire Thrash, that conversation likely occurred behind closed doors and Thrash would not be able to plead those facts with specificity. *See SCB Derivatives, LLC v. Bronson*, No. 1:22-CV-2742, 2023 WL 6388229, at *3 (N.D. Ill. Sept. 29, 2023) ("Plaintiffs may liberally plead facts which are 'peculiarly in the control of defendant' upon information and belief").[2]

Thrash has plausibly pled First Amendment retaliation. As such, Defendants' Motion with respect to Trash's First Amendment retaliation claims (Count I) is DENIED.

### 3. <u>Procedural Due Process Claims (Count II)</u>

Thrash brings procedural due process claims against Defendants Henyard and Freeman. Dkt. No. 1, ¶¶ 55–58. The Due Process Clause requires that individuals be provided some form of hearing before they are deprived of a liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (citations omitted). At a minimum, procedural due process requires notice and an opportunity to be heard. *See id.* However, before a government employee can bring a

_____

[2] The Court notes that the Complaint does not explicitly plead, "On information and belief, Defendants directed Dr. Weems to fire Plaintiff." However, it does state the "THRASH'S termination was, no doubt, in retaliation for defying HENYARD and FREEMAN's [requests]." Dkt. No. 1, ¶ 29. As such, the Court finds that Thrash has plausibly pled by inference that Defendants directed Dr. Weems in some way to terminate Plaintiff.

procedural due process claim for being terminated, he must show a protected property interest in continued employment. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). "To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, State law, contract or understanding limiting the ability of the board to discharge him." *Krecek v. Bd. of Police Comm'rs of La Grange Park*, 271 Ill. App. 3d 418, 423 (1st Dist. 1995).

Thrash states that he has a property right in his employment and argues that because he never received a hearing or other process, he was denied procedural due process. Dkt. No. 29 at 9. Defendants argue that Thrash fails to sufficiently state any of his due process claims against Defendants because he did not allege a property interest. Dkt. No. 17 at 7. The Court agrees with Defendants, and GRANTS the motion to dismiss, as follows.

Here, Plaintiff's Complaint states that the:

> THORNTON TOWNSHIP's Employee Policy & Procedure Manual includes policies and procedures on progressive discipline, including verbal warnings, written warnings, suspensions, demotions, before final termination; however, these policies were not followed by THORNTON TOWNSHIP when they terminated THRASH's employment.

Dkt. No. 1, ¶ 40.

Thrash argues that this "Employee Policy & Procedure Manual" created a property right in his employment. Dkt. No. 29 at 9. However, as Thrash also notes in his briefing:

> The Seventh Circuit in *Cromwell* [] held that a "promise [in an employee manual] will create an enforceable right, however, only if the traditional requirements for contract formation are present, the first of which is that the promise must be clear enough that an employee would reasonably believe that an offer has been made." The Court further held that generally, "the terms of employment must provide that termination will only be 'for cause' or 'otherwise evince mutually explicit understandings of continued employment.'"

*Id.* (citing *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013) (other internal citations omitted).

The Complaint in this case does not allege that this employee manual guaranteed Thrash a right to continued employment or otherwise created a contract. For instance, as alleged, the manual does not allege that Thrash may only be terminated "for cause." *See* Dkt. No. 1. Instead, the manual provided policies and procedures surrounding discipline and final termination, but having policies and procedures for termination does not guarantee continued employment. Dkt. No. 1, ¶ 40. Therefore, the Complaint fails to plausibly state a due process claim.

The Court is dismissing these claims WITHOUT PREJUDICE, however. Following this Order, discovery will open and the Court will set a deadline for amending the pleadings. If Thrash discovers a protectible property interest on some sufficient basis during discovery, he can move to amend his complaint within the appropriate deadline. Defendants' motion to dismiss is GRANTED as to Count II with respect to Henyard and Freeman; Thrash's due process claim is DISMISSED WITHOUT PREJUDICE.

### 4. **Retaliatory Discharge Claim (Count III)**

Henyard and Freeman maintain that the retaliatory discharge claims against them (Dkt. No. 1 , ¶¶ 59–64) should be dismissed against them because retaliatory discharge actions may only be brought against employers, not against the agent or employee who carried out the actual termination. Dkt. No. 16 at 8; *see also Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 18–19 (1998). Thrash concedes this point. Dkt. No. 29 at 9–10. Therefore, the motion is GRANTED with respect to Count III as to Henyard and Freeman. , The Court will DISMISS the Retaliatory Discharge claims against Henyard and Freeman WITH PREJUDICE.

### 5. **Conspiracy Claims (Count IV)**

The Court also GRANTS the motion to dismiss with respect to Thrash's section 1983 conspiracy claims. The claims are based on Thrash's Procedural Due Process claim. Dkt. No. 1, ¶ 66. As discussed above, the Court has dismissed those Due Process claims without prejudice.

"Conspiracy is not itself an independent basis of liability under Section 1983," and "[w]here there is no underlying constitutional deprivation, there is no Section 1983 conspiracy claim." *Wheeler v. Piazza*, No. 16-CV-3861, 2018 WL 835353, at *8 (N.D. Ill. Feb. 13, 2018). Because Thrash has failed to adequately allege an underlying constitutional violation, his conspiracy claims must also be dismissed. This dismissal will also be without prejudice. If Thrash moves to amend the complaint to sufficiently replead his Due Process claims, he may also move to replead the

Section 1983 conspiracy claims. As such, Thrash's conspiracy claims (Count IV) against Henyard and Freeman are DISMISSED WITHOUT PREJUDICE.

## 6. IIED Claims (Count V)

Thrash brings claims for IIED against Defendants Tiffany Henyard and Keith Freeman, in their individual capacities. Dkt. No. 1, ¶¶ 71–74. To recover for IIED under Illinois law, a plaintiff must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005).

Regarding the first element, Illinois courts have emphasized that mere insults, indignities, threats, or annoyances do not meet this standard. *See, e.g., Hayes v. Illinois Power Co.*, 225 Ill. App. 3d 819, 826 (4th Dist. 1992). Illinois courts require behavior underlying the tort of IIED to be "truly extreme and outrageous." *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (Ill. 1988). Courts may consider a number of factors, including (1) the degree of power the defendant held over the plaintiff, especially where the alleged conduct includes a threat to use that power to the plaintiff's detriment; (2) whether the defendant reasonably believed that the objective of his or her conduct was legitimate; and (3) the defendant's knowledge that the plaintiff was particularly susceptible to emotional distress. *Id.* at 87–90. Illinois "law intervenes only where the distress inflicted is so severe that no reasonable man could be expected

to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *Id.* (citation omitted).

For example, in *Doe v. Calumet City*, the Supreme Court of Illinois reversed a grant of a motion to dismiss,[3] holding that extreme and outrageous behavior was sufficiently pled based on allegations that a police officer berated a woman who had just been sexually assaulted. 161 Ill.2d 374, 392 (Ill. 1994) (overruled on other grounds as noted in *DeSmet ex rel. Est. of Hays v. Cnty. of Rock Island*, 219 Ill. 2d 497, 515, (Ill. 2006)). In addition to berating the sexual assault victim, the police officer allegedly refused to rescue her children, who were being held hostage by her attacker—because he was worried about causing property damage. *Id.* As another example, in *Kolegas*, the Illinois Supreme Court, reversing the grant of a motion to dismiss, held that extreme and outrageous conduct was sufficiently pled based on allegations that a disc jockey was live on the air when he told a caller—whose family suffered from a severe medical condition called neurofibromatosis (and as a result

---

[3] The Court notes the similar procedural postures between motions to dismiss under Illinois law and a motion to dismiss under Rule 12(b)(6), as follows.

> A [Illinois] motion attacks the legal sufficiency of a complaint. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. In ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom.

*Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 8-9 (1992) (internal citations omitted).

had a deformed head)—that no one would want to marry his wife except out of duress. 154 Ill. 2d at 22.

Here, Thrash argues that the Individual Defendants' behavior was "extreme and outrageous" because "Defendants wined and dined [Thrash] and even gave him a large raise" before asking him to vote in favor of their scheme. Dkt. No. 29 at 11. Thrash also alleges that he was terminated "[f]or simply refusing to go along with the plan," even though Defendants claimed he was "terminated for failure to punch in and out appropriately while he was verifiably on vacation." Dkt. No. 29 at 11. Given the caselaw cited above, however, Thrash's allegations fall short of alleging extreme and outrageous conduct.

Additionally, however, Thrash cites Defendants' power and authority over him as additional grounds for the actions being extreme and outrageous, citing *McGrath*. Dkt. No. 29 at 11 (citing 533 N.E.2d 806). In the employment context, "actions cannot be classified as 'extreme and outrageous' unless they 'go well beyond the parameters of the typical workplace dispute.'" *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008). Qualifying allegations must rise to the level of coercion or threats. *McGrath*, 126 Ill. 2d at 87–90 (citations omitted).

Here, (as alleged) Defendants may have abused their authority by firing Thrash for how he voted (or not) at the School Board meeting, but their alleged conduct does not meet the standard above. Instead, "Defendants wined and dined [Thrash] and even gave him a large raise" before asking him if he was going to vote in favor of their scheme. Dkt. No. 29 at 11; *see also* Dkt. No. 1, ¶¶ 18–29. That may

be enticement, but not coercion—absent an alleged threat to retaliate. As such, Thrash does not sufficiently allege "abuse [of authority] by the defendant" the results in "something [] like extortion." *McGrath*, 126 Ill. 2d at 87 (citations omitted).

For these reasons, the Motion to Dismiss is GRANTED with respect to Thrash's claims for IIED. Thrash's IIED claims (Count V) against Henyard and Freeman are DISMISSED WITH PREJUDICE.

**B.    Claims against Thornton Township**

**1. *Monell* and Vicarious Liability for Due Process, Conspiracy, and IIED Claims (Counts II, IV, and V)**

Thrash also brings Procedural Due Process, Conspiracy, and IIED claims against Thornton Township. These claims attempt to establish that Thornton Township has *Monell* liability and/or vicarious liability for the underlying acts of the Individual Defendants. However, Thrash fails to plead the underlying counts and thus cannot hold the Township liable. *See supra*, IV.A.3, IV.A.5, IV.A.6; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (*Monell* liability can exist only when there is an underlying "deprivation of federal rights"); *Bagent v. Blessing Care Corp.*, 224 Ill.2d 154 (2007) (vicarious liability requires an underlying tort). As such, and for the same reasons as explained above, Thrash's Procedural Due Process and Conspiracy claims against Thornton Township (Counts II and IV) are DISMISSED WITHOUT PREJUDICE. The IIED claim (Count V) is DISMISSED WITH PREJUDICE.

## 2. *Monell* Liability for First Amendment Retaliation (Count I)

For the reasons explained above, Thrash has plausibly pled a First Amendment retaliation claim. *See supra*, IV.A.2. However, to bring a claim against Defendant Thornton Township, a municipality, he must do more to show that the Township plausibly has *Monell* liability.

*Monell* held that "municipalities are not liable for the torts of their employees under the strict-liability doctrine of respondeat superior, as private employers are." *Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011). Rather, local governments are liable for damages under §1983 only for violations of federal rights that occur "pursuant to official municipal policy of some nature." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The "official policy" requirement for *Monell* claims is "intended to distinguish acts of the municipality from acts of employees of the municipality" and to limit liability to "action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479–80. A plaintiff can prove this essential element by showing that (1) "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or (2) the "constitutional deprivations [were] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels," or (3) the deprivation was "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell* at 436 U.S. at 658, 690; *see also Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36

(2010); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997).

Here, Thrash proceeds on two theories of *Monell* liability. First, Thrash alleges a custom and pattern of similar violations. Second, Thrash alleges that the Individual Defendants who fired him were "final decisionmakers." *See Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009) (*Monell* liability may attach to a municipality when a final decisionmaker violates section 1983).

As to the first basis, although Thornton Township argues that Thrash's allegations about a pattern of violations is conclusory, this Court finds otherwise. Thrash's allegations name nine other people who have been fired under similar circumstances. *See* Dkt. No. 1, ¶ 69, 13, n.1. Thus, it is plausible that Thornton Township had a pattern or practice of firing people who spoke out against the School Board.

As to the second basis, the Court need not reach the viability of Thrash's legal theory that Henyard and/or Freeman are final decisionmakers. It is enough that he has plausibly pled a claim based on this theory because "[t]o the extent that any viable legal theory exists to support a claim, that [entire] claim will survive a motion to dismiss." *Kopulos v. Pisaneschi*, No. 24 CV 926, 2025 WL 2239337, at *2 (N.D. Ill. Aug. 6, 2025) ("The time for identifying and testing the viability of legal theories comes after pleading and responding to the complaint, during discovery and the summary judgment process. . . . 'A full description of the facts that will prove the

plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order.'").

For these reasons, the Court DENIES Thornton Township's Motion with respect to Thrash's First Amendment Retaliation claim against the Township (Count I).

### 3. <u>Retaliatory Discharge (Count III)</u>

Next, the Township moves to dismiss Thrash's claim for retaliatory discharge. Dkt. No. 17 at 7–8. The tort of retaliatory discharge is a narrow exception to the general rule that at-will employees may be discharged for any reason or no reason. *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520 (Ill. 1985). The Supreme Court of Illinois has recognized a limited and narrow cause of action for the tort of retaliatory discharge, including in cases involving whistleblowing. *See Palmateer v. International Harvester Co.*, 85 Ill.2d 124 (Ill. 1981). To state a valid retaliatory discharge claim, an employee must show that he was dismissed in retaliation for his activities, and that the dismissal was in contravention of a "clearly mandated public policy." *Id.* at 132–34 (retaliatory discharge claim recognized where plaintiff was discharged for supplying information to a local law-enforcement agency that another employee might be violating the law, for agreeing to gather further evidence implicating the employee, and for intending to testify at the employee's trial.").

Here, the Township argues that Thrash's retaliatory discharge claim fails to allege that his dismissal contravened a public policy because Thrash fails to allege that he engaged in the kinds of activities protected by the tort. Dkt. No. 32 at 3–4.

The Township also argues that no Illinois court has held that the tort protects employees from being fired for attempting ***internally*** to prevent government corruption. Dkt. No. 32 at 4. Thrash argues on the other hand that his firing was in violation of public policy for two reasons: (1) it is a matter of public concern because Individual Defendants' "corruption" was "arguably in violation of 720 ILCS 5/33-3," and (2) Thrash was fired for engaging in activity, resisting government corruption, which "is a quintessential matter of public concern." Dkt. No. 30 at 5.

The Supreme Court of Illinois has already rejected Thrash's argument that his firing is a matter of public concern because Individual Defendants' "corruption" was "arguably in violation of 720 ILCS 5/33-3." In *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 506–07 (Ill. 1991), the Court held that this statute did not create a clearly mandated public policy that justifies recognizing retaliatory discharge claims to deter violations of the statute, because the statute already had other enforcement mechanisms (criminal penalties). *Id.* As such, Thrash's first argument fails.

Regarding Thrash's argument that he was fired for resisting government corruption, he fails to meet his burden on that basis as well. "A broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment." *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 502 (Ill. 2009) (citation omitted). "[G]eneralized expressions of public policy fail to provide essential notice to employers," so "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." *Id.* at 503 (citation omitted).

Here, Thrash's vague statements of general policies against "government corruption" and "quintessential matter[s] of public concern" are not sufficient to establish what specific right(s) was violated. *See* Dkt. No. 30 at 5. He fails to show that there is a clearly mandated policy against the specific conduct he alleges, such that the tort of retaliatory discharge should be recognized. While he cites to cases discussing protected speech in general, these cases are not in the context of retaliatory discharge under Illinois tort law. Dkt. No. 30 at 5 (citing *Brooks v. Univ. of Wisc. Bd. of Regents*, 406 F.3d 476, 484 (7th Cir. 2005); *Wainscott v. Henry*, 315 F.3d 844, 849 (7th Cir. 2003)). The cases cited by Plaintiff only support the general proposition that government corruption is a matter of public concern, but general propositions are insufficient. *See Turner*, 233 Ill. 2d at 502. As such, Thrash's second argument also fails.

For these reasons, the Court GRANTS Defendant Thornton Township's Motion with respect to Thrash's retaliatory discharge claim (Count III). The claims are DISMISSED WITH PREJUDICE.

## V.    CONCLUSION

For the reasons above the Court GRANTS Defendants' Motions IN PART and DENIES the Motions IN PART.

DATED: September 30, 2025

HON. BETH W. JANTZ

United States Magistrate Judge